IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lorraine Pimentel,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security,<br><br>　　　　Defendant. | No. CV09-1649-PHX-NVW<br><br>**ORDER AND OPINION** |

Lorraine Pimentel seeks review under 42 U.S.C. § 405(g) of the decision of the Commissioner of Social Security ("the Commissioner") denying disability benefits. Because the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and is based on legal error, the Commissioner's decision will be vacated and remanded for further administrative proceedings.

**I.　Background**

Pimentel, now forty-three years old, has been diagnosed with rheumatoid arthritis, fibromyalgia, hepatitis C, carpal tunnel syndrome, and degenerative disc disease of the cervical and lumbar spine, among other things. She applied for a period of disability and disability insurance benefits on December 19, 2005, alleging disability beginning December 10, 2005. She was insured through March 31, 2008, and must establish

disability on or before that date to be entitled to a period of disability and disability insurance benefits.

Pimentel appeared and testified at a hearing held by an administrative law judge ("ALJ") on August 21, 2008. The ALJ issued an unfavorable decision on October 14, 2008. Among other things, the ALJ found that Pimentel "had the residual functioning capacity to perform the full range of light and sedentary work" and her "past relevant work as a retail sales clerk, distribution clerk, and bank teller did not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 21.) The ALJ's decision became the final decision of the Commissioner on June 12, 2009.

Pimentel seeks vacature of the ALJ's decision, contending it is based on legal error and fails to properly address the disabling symptoms of rheumatoid arthritis, fibromyalgia, and headaches.

## II. Standard of Review

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The district court may set aside the Commissioner's disability determination only if the determination is unsupported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.*

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, in reviewing the ALJ's reasoning, the court is "not deprived of [its]

faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

**III.   Analysis**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a). At step two, the ALJ found that Pimentel had the following severe impairments: fibromyalgia, hepatitis C, rheumatoid arthritis, carpal tunnel syndrome, and degenerative disc disease of the cervical and lumbar spine. At step three, the ALJ found that through March 31, 2008, the date last insured, Pimentel did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525, and 404.1625). Pimentel does not allege any error at any of the first three steps of the sequential evaluation process.

The core issue in this appeal is whether the opinion of a rheumatologist (who treats Pimentel for rheumatoid arthritis, degenerative disc disease, and fibromyalgia) that Pimentel's pain and fatigue precludes full-time work was properly rejected, and Pimentel's subjective testimony properly found to lack credibility, because a neurologist (who treated Pimentel for lumbar disc protrusion and carpal tunnel syndrome) found insufficient objective evidence of pain and fatigue severe enough to preclude full-time work. A secondary issue is whether the ALJ's conceded error in failing to assess Pimentel's work-related abilities on a function-by-function basis before expressing her residual functional capacity in terms of the exertional levels of work, *i.e.*, light and sedentary, is harmless and does not warrant remand because the ALJ presented to the vocational expert a hypothetical based on a non-treating, non-examining physician's function-by-function assessment.

**A.  The ALJ Erred in Rejecting the Opinion of Treating Rheumatologist Ravi Bhalla, M.D.**

**1.  Legal Standard**

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians.  *Id.*  A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual."  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830.  Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results.  *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician.  *Id.* at 830.  As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion.  *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician.  *Id.* at 831.  Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality

- 4 -

of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The opinion of any physician, including a treating physician, need not be accepted, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th 2009).

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

**2.     Dr. Bhalla**

Ravi Bhalla, M.D., board certified in rheumatology, began treating Pimentel on October 3, 2005. (Tr. 219.) Blood tests established that Pimentel had a positive

rheumatoid factor and antihistone antibodies, and Dr. Bhalla prescribed Plaquenil and Lodine. (Tr. 217, 222-23.) Following the initial examination and treatment in October 2005, Dr. Bhalla continued to treat Pimentel for rheumatoid arthritis, fibromyalgia, and related conditions for several years. On August 24, 2006, Dr. Bhalla assessed Pimentel as having rheumatoid arthritis, sicca syndrome, and hepatitis C and prescribed tramadol and Plaquenil. (Tr. 307.) On March 19, 2007, Dr. Bhalla assessed Pimentel as having rheumatoid arthritis, sicca syndrome, hepatitis C, fibromyalgia, and cervical spondylosis and prescribed tramadol, doxycline, Plaquenil, and Skelaxin. (Tr. 441.) On May 21, 2007, Dr. Bhalla assessed Pimentel as having rheumatoid arthritis, sicca syndrome, hepatitis C, fibromyalgia, cervical spondylosis, and migraine headaches and prescribed tramadol, Plaquenil, Skelaxin, and doxycline. (Tr. 436-37.) On December 20, 2007, Dr. Bhalla assessed Pimentel as having rheumatoid arthritis, sicca syndrome, hepatitis C, fibromyalgia, cervical spondylosis, and migraine headaches and prescribed tramadol, Plaquenil, Skelaxin, Relafen, and methocarbamol. (Tr. 467-68.) On April 22, 2008, Dr. Bhalla assessed Pimentel as having rheumatoid arthritis, sicca syndrome, hepatitis C, fibromyalgia, cervical spondylosis, and migraine headaches and prescribed tramadol, Plaquenil, Topamax, Flexeril. (Tr. 466.) He also ordered an MRI of the lumbar spine and consultation with a specialist for epidural blocks of the lumbosacral spine. (*Id.*)

Dr. Bhalla's diagnosis of rheumatoid arthritis is supported not only by the October 2005 blood test, but also by December 2006 MRIs of both of Pimentel's wrists and metacarpophalangeal joints that revealed deterioration of both wrists and an erosion of the metacarpophalangeal joints on the right hand consistent with rheumatoid arthritis. (Tr. 122-23.) Physical examination in December 2007 revealed synovitis in multiple joints, Heberden's nodes, Bouchard's nodes, crepitus of both knees, tenderness of both ankles, and muscle spasms. (Tr. 468.) The June 2008 lumbar spine MRI indicated degenerative changes of the L5-S1 level, which results in probable low-grade impingement of the bilateral descending S1 nerve roots. (Tr. 472.)

1    In March 2006, Dr. Bhalla opined that Pimentel could lift and carry 20 pounds occasionally and 25 pounds frequently,[1] stand and/or walk at least 2 hours but less than 6 hours in an 8-hour day, and sit 4 hours in an 8-hour day.  (Tr. 244-46.)  In October 2006, Dr. Bhalla opined that, in an 8-hour workday, Pimentel could lift and carry more than 10 pounds, less than 20 pounds; sit more than 2 hours, less than 3 hours; stand more than 1 hour, less than 2 hours; and walk less than 1 hour.  (Tr. 143.)  He further opined that Pimentel's pain and fatigue put moderate to moderately severe limitations on her ability to sustain work activity for 8 hours a day, 5 days a week.  (Tr. 144.)  In April 2007, Dr. Bhalla again opined that, in an 8-hour workday, Pimentel could lift and carry more than 10 pounds, less than 20 pounds; sit more than 2 hours, less than 3 hours; stand more than 1 hour, less than 2 hours; and walk less than 1 hour.  (Tr. 371.)  He opined again that Pimentel's pain and fatigue put moderate to moderately severe limitations on her ability to sustain work activity for 8 hours a day, 5 days a week.  (Tr. 372.)

The ALJ found, and the Commissioner does not dispute, that Pimentel had the following severe impairments:  fibromyalgia, hepatitis C, rheumatoid arthritis, carpal tunnel syndrome, and degenerative disc disease of the cervical and lumbar spine.  (Tr. 17.)  The ALJ further found that these impairments cause significant limitations in Pimentel's ability to perform basic work-related activities.  (*Id.*)  Nevertheless, the ALJ rejected Dr. Bhalla's opinion that the fatigue and pain from these severe impairments precluded Pimentel from full-time work.

The ALJ identified two reasons for rejecting Dr. Bhalla's assessment of Pimentel's residual functional capacity:

> After carefully reviewing all of the medical evidence and opinion, the undersigned rejects Dr. Bhalla's assessment of the claimant's residual functional capacity [*sic*.] several reasons; first, his opinion is contradicted by the weight of credible medical evidence and opinion and second, it is apparent that Dr. Bhalla has merely adopted the claimant's subjective

---

[1] Dr. Bhalla may have intended to opine that Pimentel could carry the lighter amount frequently and the heavier amount occasionally.

- 7 -

> allegations of impairment as his own and his assessment reflect [*sic.*] this bias (Exhibit 1F/31-32).

(Tr. 20.) No evidence in the record, much less substantial evidence, supports the ALJ's second reason for rejecting Dr. Bhalla's assessment. The ALJ's conclusion that Dr. Bhalla has merely adopted Pimentel's subjective allegations of impairment is speculative.

The ALJ's first reason for rejecting Dr. Bhalla's assessment of Pimentel's residual functional capacity, *i.e.*, "his opinion is contradicted by the weight of credible medical evidence and opinion," conflicts with 20 C.F.R. § 404.1527(d) and the Ninth Circuit standards for weighing medical opinions. The ALJ was required to apply the factors listed in § 404.1527(d)(2)(i), (d)(2)(ii), and (d)(3)-(6): length of treatment relationship, frequency of examination, nature and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization, and other factors. As discussed above, Dr. Bhalla treated Pimentel for at least several years, examined her multiple times, and specializes in treating rheumatology and fibromyalgia, and objective medical evidence supports his findings. Thus, the ALJ was permitted to reject Dr. Bhalla's opinion only for "clear and convincing" reasons or, if contradicted, only by identifying "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31; *accord Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The ALJ's decision does not meet either standard.

### 3. Dr. Schultz

The ALJ assigned controlling evidentiary weight to the opinions of treating physician Dale R. Schultz, D.O., examining physician Gregory Hunter, M.D., and reviewing physician Steven Otto, M.D., J.D. Dr. Schultz is a board certified specialist in psychiatry and neurology and in osteopathic neuropsychiatry. Dr. Schultz treated Pimentel from 1999 through 2004 for back pain and carpal tunnel syndrome. He examined her twice in 2006. On March 28, 2006, Dr. Schultz reported:

> ...this 38-year-old female was last seen in September of 2004. At that time she complained she is still having low back and lower extremity pain. We know from the past that she had a very large disc herniation at L5-S1 and

>had been treated last year with epidural injections which helped to a moderate degree but the pain is still problematic and we would think after this period of time there should be some shriveling of the disc although she is having more pain it may not reflect the size of the disc but just inflammation.
>
>She also has developed some problems with neck and right upper extremity pain and numbness. Some of the pain in the upper extremity we feel is do [*sic*.] to recurrent carpal tunnel syndrome on the right which was previously documented clinically and by EMG which showed a median nerve latency delay at the wrist.

(Tr. 257.) The ALJ did not refer to Dr. Schultz's March 28, 2006 report, which states "the pain is still problematic," but instead relied solely on Dr. Schultz's April 11, 2006 report (Tr. 154-55) and focused on Dr. Schultz's opinion of Pimentel's credibility and conclusion that she is not disabled, an issue reserved to the Commissioner under 20 C.F.R. § 404.1527(e)(1). The ALJ's decision quotes twice Dr. Schultz's statements that Pimentel "constantly reminds me that I need to fill out forms attesting to her disability" and, with added emphasis (both bold and underlining), "I do not feel she is disabled by either her carpal tunnel syndrome or her low back problem and have refused to make medical statements to that effect." (Tr. 18, 19.) The ALJ's decision characterizes "constantly reminds me" as "harassing." (Tr. 18.)

Further, from Dr. Schultz's April 11, 2006 statement that Pimentel "resists epidural injections," which he previously described as only moderately helpful, the ALJ's decision states that "medical evidence . . . shows that the claimant pointedly refused to accept treatment (which would have alleviated her alleged lower back pain) choosing instead over-the-counter medications to treat her alleged pain." (Tr. 18.) Even if the ALJ's decision drew only proper inferences from Dr. Schultz's reports and did not give weight to an opinion on an issue reserved to the Commissioner, Dr. Schultz's opinion regarding the severity and intensity of the effects of Pimentel's carpal tunnel syndrome and low back pain does not conflict with Dr. Bhalla's opinion regarding the severity and intensity of the effects of Pimentel's rheumatoid arthritis and fibromyalgia.

    **4. Dr. Hunter**

The ALJ's decision also states that he assigned controlling weight to the evidentiary summary and conclusions of State agency consulting examiner Gregory Hunter, M.D., a neurologist, although the ALJ did not provide any specific reference to evidence in the record. (Tr. 20.) Dr. Hunter diagnosed Pimentel with migraine and multiple chronic pain and opined that her conditions would not impose any limitations for 12 continuous months. (Tr. 182.) Dr. Hunter noted Pimentel appeared to have migraine with associated sleep disorder and "suspected that her difficulties with migraine management do overlap into difficulties with chronic pain management." (Tr. 186.) She did not "show any focal abnormalities to suggest a specific structural neurologic impairment." (*Id.*) Dr. Hunter did not observe any clear neurological basis for her multiple chronic pains. (Tr. 186.) However, Dr. Hunter's evidentiary summary and conclusions regarding Pimentel's migraine and multiple chronic pain do not conflict with Dr. Bhalla's opinion regarding the severity and intensity of the effects of Pimentel's rheumatoid arthritis and fibromyalgia.

Moreover, the ALJ's decision states, "Dr. Hunter reviewed several MRI examinations of the claimant's lumbar spine, the latest dated June 23, 2004, which revealed a broad posterior disc protrusion that did not affect the S1 never root or impinge on it." (Tr. 20.) But Dr. Hunter's report stated the June 23, 2004 MRI showed a "fairly broad posterior disc extrusion that favors the right although it does yield effect on the left S1 nerve root and a little more effect on the right S1 nerve root where it displaces it against the right facet slightly. (Tr. 186.) And Dr. Schultz reported that her 2002 MRI scan showed a disc protrusion at L5-S1 "now abutting the S1 nerve roots," her June 2004 MRI scan showed "a disparate disc protrusion at L5-S1," and in September 2004 "without question, she has a significant disc protrusion [at] L5-S1." (Tr. 259, 262-63.)

### 5. Dr. Otto

Further, the ALJ assigned controlling weight to the evidentiary summary and conclusions of State agency reviewing consultant Steven Otto, M.D., J.D., a non-treating,

1  non-examining obstetrician-gynecologist, even though the ALJ found, "Dr. Otto's
2  conclusions were far more critical of the claimant's subjective allegations than the
3  opinions of many of the other specialists who examined the claimant." (Tr. 20.)  First,
4  the opinion of a non-examining physician is not itself substantial evidence that justifies
5  the rejection of the opinion of either a treating physician or an examining physician,
6  *Lester,* 81 F.3d at 831, and second, the opinion of a physician need not be accepted, "if
7  that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray*,
8  554 F.3d at 1228.

9        Dr. Otto indicated that Pimentel's primary diagnosis is rheumatoid arthritis and
10  secondary diagnosis is degenerative disk disease of the lumbar spine.  (Tr. 134.)  He
11  opined that Pimentel can lift and carry 20 pounds occasionally and 10 pounds frequently,
12  stand or walk about 6 hours in an 8-hour workday, and sit about 6 hours in an 8-hour
13  workday.  (Tr. 135.)  In the section of the physical residual functional capacity assessment
14  form seeking discussion of whether the severity of symptoms and their alleged effect on
15  function is consistent with the total medical and nonmedical evidence, Dr. Otto wrote
16  only:  "partially credible:  see comments."  (Tr. 139.)  In the section of the physical
17  residual functional capacity assessment form asking whether there were treating or
18  examining source conclusions about Pimentel's limitations or restrictions that were
19  significantly different from his findings, Dr. Otto checked the box for "yes."  (Tr. 140.)
20  Dr. Otto then was asked to explain why those conclusions are not supported by the
21  evidence in the file and to cite the source's name and the statement date.  (*Id.*)  Dr. Otto
22  wrote only:  "see discussion in comments."  (*Id.*)  In the comments, Dr. Otto relied on Dr.
23  Schultz's comment that he felt Pimentel was "working [the] system for financial gain."
24  (Tr. 141.)  He misstated Dr. Schultz's reports as saying she "has refused most treatments
25  and is perhaps narcotic-seeking in behavior"; Dr. Schultz's reports actually state that
26  Pimentel declined a previously moderately effective lumbar epidural injection, "choosing
27  to just take over-the-counter analgesics," and "We are also disinclined to provide her any
28

narcotics." (*Id.*)  Dr. Otto's opinion plainly is "brief, conclusory, and inadequately supported by clinical findings" and not entitled to controlling weight.

Even if treating physician Dr. Bhalla's opinion conflicted with other medical evidence, the ALJ erred by rejecting it without providing reasons supported by substantial evidence in the record.  *See Lester,* 81 F.3d at 830.  But Dr. Bhalla's opinion regarding the severity of the effects of Pimentel's rheumatoid arthritis and fibromyalgia did not conflict with other medical evidence, and the ALJ erred by rejecting it without providing clear and convincing reasons for doing so.  *See id.*

**B.     The ALJ Erred in Evaluating Pimentel's Credibility.**

In evaluating the credibility of Pimentel's testimony regarding subjective pain or other symptoms, the ALJ was required to engage in a two-step analysis:  (1) determine whether Pimentel had presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject Pimentel's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  To support a lack of credibility finding, the ALJ is required to point to specific facts in the record that demonstrate that Pimentel is in less pain than she claims.  *Id.* at 592.  To be found credible regarding subjective pain or fatigue, a claimant is not required to:  (1) produce objective medical evidence of the pain or fatigue itself, or the severity thereof; (2) produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom; or (3) show that her impairment could reasonably be expected to cause the severity of the alleged symptom, only that it could reasonably have caused some degree of the symptom.  *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

The ALJ found Pimentel had presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other

symptoms alleged and did not make a finding of malingering. However, the ALJ rejected Pimentel's testimony about the severity of the symptoms without giving specific, clear, and convincing reasons for the rejection. First, he gave general conclusory reasons:

> The claimant alleges that she has been unable to work in any capacity due to her impairments and limitations, but the objective medical evidence and credible medical opinion does not support the claimant's subjective allegations, which diminishes her credibility.
>
> While the claimant has alleged having severe fibromyalgia, hepatitis C, Rheumatoid arthritis, carpal tunnel syndrome, and degenerative disc disease of the cervical and lumbar spine, the medical evidence does not support her subjective allegation that these impairments have prevented her from working and, in fact, shows the claimant has exaggerated her limitations and symptoms, which diminishes her credibility.

(Tr. 19.)

Then, the ALJ identified Dr. Schultz's opinion and other unidentified sources as reasons for his adverse credibility determination:

> As discussed above, on April 11, 2006, Dr. Schultz . . . made the following statement in his clinical report after examining the claimant: "She constantly reminds me that I need to fill out forms attesting to her disability. **I do not feel she is disabled by either her carpal tunnel syndrome or her low back problem and have refused to make medical statements to that effect** (emphasis added)." Dr. Schultz' opinion. Dr. Schultz examined the claimant on two occasions, in February and again in April 2006, and no fewer than five sources examined the claimant in 2006, but none of them found any definitive evidence to support her subjective allegations of pain (Exhibit 1F/42 and 61).
>
> The undersigned assigns controlling evidentiary weight to Dr. Schultz' opinion. . . .

(Tr. 19.) The ALJ referenced Exhibit 1F/42, which is Dr. Schultz's April 11, 2006 report. (Tr. 154.) As previously noted, opinions on issues reserved to the Commissioner, such as whether a claimant is disabled, are not medical opinions. 20 C.F.R. § 404.1527(e). Moreover, the ALJ ignored Dr. Schultz's March 28, 2006 report, which states: "We know from the past that she had a very large disc herniation at L5-S1 and had been treated last year with epidural injections which helped to a moderate degree but the pain is still problematic . . . ." (Tr. 257.)

The ALJ also referenced Exhibit 1F/61, which is a Social Security Administration Explanation of Determination that lists evidence used to decide Pimentel's claim. (Tr. 173.) It identifies two reports from Dr. Schultz, one from Dr. Hunter, one from Dr. Bhalla (Valley Arthritis Care), one from Associated Foot & Ankle Specialist, and one from Forty-Third Ave Med. Associates, P.C. (*Id.*) The Explanation of Determination states only:

> This is a 39 yr old with 10 yrs of formal education whose PRW is that of a distribution clerk, mail handler for USPS and bank teller. DDS MC has determined the clt has the ability for light type work. Clt describes PRW as light as does the DOT 209.687-014 L4; 211.362-018 L5. Therefore, clt can return to PRW as she describes and as performed in the national economy.

(Tr. 173.) At most, this evidence shows only that "DDS MC" had determined that Pimentel was able to perform light work. It does not provide a specific, clear, and convincing reason to reject Pimentel's subjective testimony.

Next, the ALJ provided his own opinion that if Pimentel really experienced severe chronic pain, there would be objective evidence of it:

> The undersigned notes that, if the claimant really experienced severe long-term chronic pain, as she says she has, there would be some observable sign of such pain, such as muscle atrophy, restricted motor function, muscle weakness, compensation, and a number of other demonstrable signs of severe long-term chronic pain, but the claimant has none and no treating or examining source has reported any such evidence, which further diminishes the claimant's credibility.
>
> While the objective medical evidence . . . does not reflect any remarkable findings, the claimant has continued to allege that she has severe degenerative disc disease and chronic pain in her cervical spine. Similarly, the claimant alleged that she has severe migranous headaches and degenerative disc disease of the lumbar spine, but treating and examining physicians have disagreed as to whether the alleged headaches are truly migranous in nature or are vascular and whether she has exhibited any focal abnormalities.

(Tr. 19.) It is unclear why the type of headache, *i.e.*, vascular or migraine, would be relevant to determining the severity and limiting effect of headache pain. Regardless, an ALJ may not reject subjective symptom testimony simply because there is no objective evidence of the pain or fatigue or that the impairment can reasonably produce the degree of symptom alleged. *Smolen*, 80 F.3d at 1282.

- 14 -

1  Further, the ALJ erroneously gave controlling weight to reviewing physician Dr.
2  Otto's opinion of Pimentel's subjective allegations even though his conclusions
3  admittedly were "far more critical" than those of the treating and examining specialists:

> In December 2006, [Dr. Otto] reviewed all of the medical evidence and concluded that the claimant's allegations of carpal tunnel syndrome and migraine headaches were non-severe. Dr. Otto's conclusions were far more critical of the claimant's subjective allegations than the opinions of many of the other specialists who examined the claimant [].
>
> The undersigned assigns controlling evidentiary weight to Dr. Otto's evidentiary summary and conclusions since they are amply supported by clear and unequivocal medical evidence (Exhibit 1F/22-29).

(Tr. 19-20.)

Finally, the ALJ erred by giving weight to the absence of opinion by Pimentel's primary care physician James Beach, D.O., without giving a specific, clear, and convincing reason for inferring from the absence of opinion that Dr. Beach actually held an adverse opinion:

> While James Beach, D.O., was the claimant's primary treating physician for many, many years, far longer than any other treating source, Dr. Beach's clinical records do not reflect limitations on the claimant's residual functional capacity which have prevented her from performing light and sedentary work as she has alleged, which significantly diminishes the claimant's credibility. *The absence of any such limitations* and Dr. Beach's numerous referrals to specialists in multiple fields of medicine who found little or no physical cause for the claimant's alleged pains, radiculopathy, and paresthesia in her extremities *further diminishes the claimant's credibility* [].

(Tr. 20 (emphasis added).)  Nor did the ALJ provide any reason for concluding that Dr. Beach's numerous referrals to specialists diminishes Pimentel's credibility other than the referrals did not result in objective evidence of her pain.

Thus, the ALJ committed legal error by requiring Pimentel to produce objective medical evidence of her subjective pain and fatigue and the severity thereof, produce objective medical evidence of the causal relationship between her medically determinable impairments and the symptoms, and show that her impairment could reasonably be expected to cause the severity of her pain and fatigue.  *See Smolen*, 80 F.3d at 1282.

Also, the ALJ failed to give specific, clear, and convincing reasons for rejecting Pimentel's subjective testimony.  *See Vasquez*, 572 F.3d at 591.

### C. The ALJ's Expression of Residual Functional Capacity as "the Full Range of Light and Sedentary Work" Is Reversible Error.

At step four of the sequential evaluation process, the ALJ determined that Pimentel "had the residual functional capacity to perform the full range of light and sedentary work." (Tr. 18.)  The Commissioner concedes that the ALJ erred by failing to assess Pimentel's work-related abilities on a function-by-function basis before expressing her residual functional capacity in terms of the exertional levels of work, *i.e.*, light and sedentary, as required by SSR 96-8p.  The Commissioner contends, however, that the error is harmless because the ALJ ultimately relied on the vocational expert's testimony regarding Dr. Otto's function-by-function assessment of Pimentel's residual functional capacity.  (Doc. 15 at 12-13.)  As previously discussed, Dr. Otto's opinion was not entitled to be given controlling weight.  Therefore, the ALJ's failure to comply with SSR 96-8p cannot be deemed harmless merely because the ALJ and the vocational expert relied on Dr. Otto's assessment.

## IV. Remand

If the Commissioner's decision is not supported by substantial evidence or suffers from legal error, the court has discretion to reverse and remand either for an award of benefits or for further administrative proceedings.  *Smolen*, 80 F.3d at 1292.  The "credit-as-true" rule requires that the Commissioner must accept as true a claimant's subjective pain testimony if the ALJ fails to articulate sufficient reasons for refusing to credit it.  *Vasquez*, 572 F.3d at 593.  The purpose of the rule is "to discourage ALJs from reaching a conclusion about a claimant's status first, and then attempting to justify it by ignoring any evidence in the record that suggests an opposite result."  *Id.*  But the rule applies only when there are no outstanding issues that must be resolved before a proper disability determination can be made, and where it is clear from the record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited.  *Id.*

Here, the ALJ failed to articulate sufficient reasons for refusing to credit Pimentel's pain testimony. As in *Vasquez*, application of the credit-as-true rule would not result in immediate payment of benefits because other issues must be resolved before a proper disability determination can be made. Unlike *Vasquez*, however, Pimentel is only forty-three years old, and no other factors justify applying the credit-as-true rule where there are outstanding issues other than the claimant's subjective pain.

IT IS THEREFORE ORDERED that the Clerk enter judgment vacating the final decision of the Commissioner of Social Security and remanding this case to the Commissioner for further proceedings consistent with this order. The Clerk will please close this case.

DATED this 19th day of November 2010.

/S/
JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE